UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| AHMED AL BAKRY, <br><br>   Plaintiff, <br><br>   v. <br><br> AL H. ZADEH; NEWPORT SPECIALTY CARS INC.; MEGA ENGINEERING VEHICLES, INC.; NEWPORT CONVERTIBLE ENGINEERING INC.; and DOES 1–10, <br><br>   Defendants. | Case No.: SACV 20-01383-CJC(KESx) <br><br> **ORDER DENYING PLAINTIFF'S APPLICATION FOR A TEMPORARY RESTRAINING ORDER [Dkt. 8] AND ORDERING PLAINTIFF TO SHOW CAUSE WHY THE CASE SHOULD NOT BE REFERRED TO ARBITRATION** |

**I. INTRODUCTION & BACKGROUND**

On July 29, 2020, Plaintiff, a luxury and vintage car collector residing in the United Arab Emirates and France, brought this action against various car shops in Newport Beach, California and their owner. (Dkt. 1 [Complaint].) Pursuant to a contract between the parties, Defendants were to (1) purchase on Plaintiff's behalf a 2017 Bentley

Mulsanne, for which Plaintiff would pay the purchase price of $305,000, and (2) convert the Mulsanne into to a custom, two-door coupe with a power convertible, for which Plaintiff would pay $285,000. (Dkt. 9 [Plaintiff's Declaration in Support of Application, hereinafter "Pl. Decl."] ¶¶ 18, 22, 26; *id.* Ex. E [Agreement].) Plaintiff alleges that he has paid everything except the final 20% ($57,500) of the amount agreed—"which he is willing and able to pay forthwith"—yet Defendants refuse to deliver the car unless Plaintiff pays an additional $30,000 beyond the contract price. (Compl. ¶¶ 68–69 & n.2.) Plaintiff asserts claims for breach of contract, fraud, and conversion, among other claims. (*Id.* ¶¶ 63–115.)

The day he filed his Complaint, Plaintiff also applied for a temporary restraining order requiring Defendants to immediately turn over the Mulsanne in question to a receiver or neutral third-party until this dispute is resolved. (Dkt. 8 [*Ex Parte* Application for Temporary Restraining Order, hereinafter the "Application" or "App."].) On July 30, 2020, the Court ordered Plaintiff to meet and confer with Defendants and propose a briefing schedule on the Application. (Dkt. 18.) The Application is now fully briefed. For the following reasons, Plaintiff's application for a temporary restraining order is **DENIED**.[1]

## II. LEGAL STANDARD

A temporary restraining order is an extraordinary and drastic remedy that may only be awarded upon a clear showing that the moving party is entitled to relief. *See Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). The purpose of a temporary restraining order is to preserve the status quo before a preliminary injunction hearing may be held. *Vera v. Pfiffer*, 2020 WL 5027991, at *1 (C.D. Cal. July 23, 2020). To receive a temporary

---

[1] Having read and considered the papers presented by the parties, the Court finds this matter appropriate for disposition without a hearing. *See* Fed. R. Civ. P. 78; Local Rule 7-15.

restraining order, the plaintiff "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat'l Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *see also Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001) (standard for issuing a temporary restraining order "substantially identical" to that for issuing a preliminary injunction).  The Ninth Circuit balances these factors using a "sliding scale" approach, where "a stronger showing of one element may offset a weaker showing of another." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). However, the plaintiff must "make a showing on *all* four prongs." *Id.* at 1135 (emphasis added).

### III. DISCUSSION

Plaintiff has not made a "clear showing that [he] is entitled to relief."  *Mazurek*, 520 U.S. at 972.  First, Plaintiff fails to make a sufficient showing that he is likely to succeed on the merits of his claims.  Plaintiff asserts claims for breach of contract and conversion, among others.  (Compl. ¶¶ 63–115.)  To succeed on these claims, he must show that Defendants are wrongfully refusing to give him the car.  However, Plaintiff has failed to make a strong enough showing that this is the case to warrant the substantial change in the status quo that Plaintiff requests.

The Court has before it two different sets of facts.  Plaintiff maintains that Defendants are trying to extort an additional $30,000 from him "for alleged work and materials that were never mentioned in the Agreement nor approved" by Plaintiff.  (App. at 8; Pl. Decl. ¶¶ 31–32.)  Plaintiff notes that after the parties executed the agreement, Bentley announced a forthcoming "Bentley Grand Convertible" that looked very similar to the car Plaintiff hired Defendants to make, priced at $3.5 million.  (Pl. Decl. ¶¶ 34–37.)

Plaintiff contends that Defendants are demanding more money because they now realize how much the car they converted for Plaintiff could be worth. (App. at 8.) Defendants, on the other hand, argue that Plaintiff has been in "dire financial straits" since the agreement was executed, and has been unable to make payments. (Dkt. 22 [Opposition, hereinafter "Opp."] at 7; Zadeh Decl. Exs. C–E, H–I [emails requesting payment in 2017 and 2020].) Indeed, even Plaintiff admits that he has not yet paid the full contract price for the car. (Compl. ¶¶ 68–69 & n.2.) Defendants further contend that Plaintiff orally agreed to pay the additional $30,000 on top of the contract price because he requested changes to the conversion that increased Defendants' costs. (*Id.* [citing Declaration of Al H. Zadeh ¶¶ 15–16].) Under these circumstances, Plaintiff has failed to show that he is likely to succeed on the merits. There are two sides to this story, and numerous contested facts that litigation (or potentially arbitration) will have to resolve.

Moreover, Plaintiff does not simply seek to preserve the status quo with a prohibitory injunction. *See Hernandez v. Sessions*, 872 F.3d 976, 998 (9th Cir. 2017) (explaining that prohibitory injunctions preserve the status quo by ordering the defendant to refrain from certain acts). Rather, he seeks a mandatory injunction ordering Defendants to place the car into a receivership or give it to some third party until the parties' dispute is resolved. (App. at 14.) Because mandatory injunctions "go[ ] well beyond simply maintaining the status quo," a party must "establish that the law and facts *clearly favor* her position, not simply that she is likely to succeed." *Stanley v. Univ. of S. Cal.*, 13 F.3d 1313, 1320 (9th Cir. 1994); *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015). Such injunctions are "particularly disfavored." *Am. Freedom Def. Initiative v. King Cty.*, 796 F.3d 1165, 1173 (9th Cir. 2015). Here, Plaintiff has not shown he is likely to succeed on the merits, much less that the law and facts *clearly favor* his position. *See id.*

Nor has Plaintiff shown that irreparable harm is likely.  *All. for the Wild Rockies*, 632 F.3d at 1131 (explaining that a plaintiff must show "irreparable harm is *likely,* not just possible, in order to obtain a preliminary injunction").  Plaintiff argues that he stands to lose his one-of-a-kind car because Defendants are "actively work[ing] to sell the automobile." (App. at 14.)  But the documents Plaintiff cites in support of this contention are not offers to sell Plaintiff's car.  The first exhibit, a selection from Defendants' website, states that Defendants "will completely redesign and engineer your vehicle," noting that "everything can be personalized to meet the individual needs of the client," and that Defendants are "currently taking a standard issue Bentley Mulsanne sedan and creating a 2-door Bentley Mulsanne convertible." (Dkt. 10 [Declaration of David A. Berstein], Ex. D.)  The website does not list a price or otherwise solicit inquiries into buying this particular car. (*See id.*)  The same is true of Defendants' posts on Facebook and Instagram. (*See* Bernstein Decl. Exs. E–G.)  Accordingly, the possibility that Defendants would sell Plaintiff's car is pure speculation.  And "speculative injury does not constitute irreparable injury sufficient to warrant granting a preliminary injunction." *Boardman v. Pac. Seafood Grp.*, 822 F.3d 1011, 1022 (9th Cir. 2016) (explaining that "a plaintiff must *demonstrate* immediate threatened injury as a prerequisite to preliminary injunctive relief").  Additionally, the Facebook and Instagram posts Plaintiff submits are from 2017 and 2018, and Plaintiff fails to explain why it is likely that the car will be *imminently* sold if a temporary restraining order does not issue.

Given the seemingly genuine dispute over the parties' respective responsibilities, the balance of equities do not weigh in favor of issuing a temporary restraining order.  Nor is a temporary restraining order in the public interest.

//

//

//

## IV. CONCLUSION

After considering the four *Winter* factors, the Court finds that Plaintiff has failed to meet his burden of showing that he is entitled to a temporary restraining order. Accordingly, Plaintiff's application is **DENIED**.

In their briefing regarding the temporary restraining order, Defendant argued that this case should be stayed and referred to arbitration. (Opp. at 5–6 [referring to the arbitration clause in paragraph 10 of the conversion agreement].) Plaintiff disputes the arbitrability of this case. (Dkt. 28 [Reply] at 2.) Accordingly, the Court **ORDERS** Plaintiff to show cause why this matter should not be referred to arbitration. Defendant shall file an opening brief on this issue by September 14, 2020. Plaintiff shall file an opposition by September 28, 2020, and Defendant a reply by October 5, 2020. A hearing on the matter will be scheduled if necessary. In lieu of this briefing, the parties may submit a stipulation to refer this case to arbitration.

DATED:     September 1, 2020

_____

CORMAC J. CARNEY

UNITED STATES DISTRICT JUDGE