**JS-6**



FILED
CLERK, U.S. DISTRICT COURT
11/20/2020
CENTRAL DISTRICT OF CALIFORNIA
BY: ___CW___ DEPUTY

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA - SOUTHERN DIVISION

| | |
|---|---|
| AHMED AL BAKRY,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>AL H. ZADEH; NEWPORT SPECIALTY CARS INC.; MEGA ENGINEERING VEHICLES, INC.; NEWPORT CONVERTIBLE ENGINEERING INC.; and DOES 1–10,<br><br>　　　　Defendants. | Case No.: SACV 20-01383-CJC(KESx)<br><br>**ORDER REFERRING CASE TO ARBITRATION AND STAYING CASE PENDING RESOLUTION OF ARBITRATION** |

## I. INTRODUCTION & BACKGROUND

In this case, Plaintiff, a luxury and vintage car collector residing in the United Arab Emirates and France, alleges that various car shops in Newport Beach and their owner breached a contract to convert a luxury car for Plaintiff. (Dkt. 1 [Complaint].) In the contract, Defendants agreed to (1) purchase on Plaintiff's behalf a 2017 Bentley

Mulsanne, for which Plaintiff would pay the purchase price of $305,000, and (2) convert the Mulsanne into to a custom, two-door coupe with a power convertible, for which Plaintiff would pay $285,000. (Dkt. 9 [Plaintiff's Declaration, hereinafter "Pl. Decl."] ¶¶ 18, 22, 26.) Plaintiff has not paid all that is owed under the contract, and Defendants refuse to turn over the car. (Compl. ¶ 56 [alleging that Plaintiff has not yet made the final 20% payment, or $57,500].)

As the Court has previously explained in more detail, there are two sides to the story in this case. Plaintiff maintains that he is ready to pay the final 20%, but Defendants are trying to extort an additional $30,000 from him "for alleged work and materials that were never mentioned in the Agreement nor approved" by Plaintiff. (Dkt. 8 at 8; Pl. Decl. ¶¶ 31–32; Compl. ¶¶ 68–69 & n.2.) Defendants, on the other hand, contend that Plaintiff orally agreed to pay the additional $30,000 on top of the contract price because he requested changes to the conversion that increased Defendants' costs. (Dkt. 22 at 7 [citing Dkt. 20, Declaration of Al H. Zadeh, ¶¶ 15–16].)

In their response to Plaintiff's application for a temporary restraining order, Defendants argued the Court should refer this dispute to arbitration. (Dkt. 22 at 5–6.) The Court ordered Plaintiff to show cause why this matter should not be referred to arbitration. Now before the Court is the parties' briefing on that issue. (Dkts. 30 [Defendants' Brief, hereinafter "Mot."], 33 [Plaintiff's Opposition, hereinafter "Opp."], 35 [Defendant's Reply, hereinafter "Reply"].) For the following reasons, this matter is **REFERRED** to mediation (and if mediation is not successful, then to arbitration) and **STAYED** pending the outcome of mediation (or arbitration if applicable).[1]

## III. DISCUSSION

---

[1] Having read and considered the papers presented by the parties, the Court finds this matter appropriate for disposition without a hearing. See Fed. R. Civ. P. 78; Local Rule 7-15.

The Federal Arbitration Act ("FAA") provides that written arbitration agreements are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of the contract." 9 U.S.C. § 2. The FAA is "a congressional declaration of a liberal federal policy favoring arbitration agreements." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). In light of this policy, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Id.* at 24–25. The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis in original). A court's role is therefore limited to determining "(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Kilgore v. KeyBank, N.A.*, 718 F.3d 1052, 1058 (9th Cir. 2013) (en banc) (citation omitted).

Plaintiff's claims clearly "fall[] within the scope of the parties' agreement to arbitrate." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1131 (9th Cir. 2000). The parties' agreement—which Plaintiff attached to his Complaint—contains this arbitration provision:

> **10. ARBITRATION**: The parties to this Agreement agree that should any dispute arise through any aspect of this relationship, including but not limited to any matters disputes or claims the parties shall confer in food faith to promptly resolve any dispute. In the event that the parties are unable to resolve the issue or dispute between them, the matter shall be summitted to Mediation in accordance with the Commercial Rules of the American Arbitration Association before certified mediator with the venue exclusively in Orange County California USA. In the event that there is not a resolution after mediation, then any claims shall be submitted to binding arbitration with venue exclusively in Orange County California USA and conducted in

>accordance with the commercial Rules of American Arbitration Association. Judgement upon the award may be entered in any court of competent jurisdiction. The parties shall each bear their own costs, expert fees, attorneys fees and other fees incurred in connection with this Agreement. All administrative and arbitration fees and costs and expenses shall be borne equally by both parties within this agreement.

(Compl. Ex. A; Dkt. 31-1, Ex. A.) The language of the agreement is clear: *any* dispute that arises from *any* aspect of the parties' relationship for Defendants' conversion of Plaintiff's car will be submitted to mediation, and if mediation is not successful, then to arbitration. In this case, Plaintiff alleges that Defendants are failing to turn over his car as the agreement requires unless Plaintiff pays an additional $30,000 for aspects of the conversion that the parties orally negotiated after the written contract was signed. (Compl. ¶¶ 68–69 & n.2.) The parties' agreement to arbitrate any dispute arising from any aspect of the parties' relationship covers this claim.

Plaintiff does not argue that there was no arbitration agreement between the parties. Rather, he argues that "while the parties manifested a meeting of the minds to arbitrate disputes related to the Written Agreement, they had no cause to believe that any subsequent oral agreement and/or agreement by conduct would be subject to arbitration." (Opp. at 3.) The Court is not persuaded. Plaintiff alleges in his Complaint that Defendants have breached the written contract, not any oral agreement. Indeed, Plaintiff does not allege the existence of any oral agreement between the parties in his Complaint at all. Even if the contract Plaintiff alleges was breached were the oral contract, Plaintiff would have had cause to believe that it would be subject to arbitration because the contract stated that any dispute arising from any aspect of their relationship would be subject to mediation and arbitration. Both Plaintiff and Zadeh initialed each page of the agreement, including the pages containing this term.

The Court therefore concludes that the parties have a binding agreement to arbitrate and therefore refers the matter to arbitration and stays the case. *See* 9 U.S.C. § 3; *MediVas, LLC v. Marubeni Corp.*, 741 F.3d 4, 9 (9th Cir. 2014).

**IV. CONCLUSION**

For the foregoing reasons, this matter is **REFERRED** to mediation (and arbitration if the mediation is unsuccessful), and the case is **STAYED** pending resolution of mediation (and arbitration if applicable).

DATED: November 20, 2020

HON. CORMAC J. CARNEY

UNITED STATES DISTRICT JUDGE