Gordon Andrew Petersen, II   (SBN 279587)
drew@dpetersenlegal.com
LAW OFFICE OF DREW PETERSEN, P.C.
17581 Irvine Boulevard, Suite 108
Tustin, California 92780
(714) 569-0043 tel
(714) 569-0289 fax

Attorney for Defendants
AL H. ZADEH, NEWPORT SPECIALTY CARS INC.,
and MEGA ENGINEERING VEHICLES INC.

**UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

**SOUTHERN DIVISION**

| | |
|---|---|
| AHMED AL BAKRY,<br><br>　　　　Plaintiff,<br>v.<br><br>AL H. ZADEH; NEWPORT SPECIALTY CARS INC.; MEGA ENGINEERING VEHICLES, INC.; NEWPORT CONVERTIBLE ENGINEERING INC.; and DOES 1–10,<br><br>　　　　Defendants. | Case No.: 8:20-CV-01383-CJC-KES<br>Judge: Hon. Cormac J. Carney<br>Courtroom: 9B<br><br>**ANSWER OF DEFENDANTS AL H. ZADEH, NEWPORT SPECIALITY CARS INC., AND COUNTERCLAIMS OF NSC NEWPORT SPECIALITY CARS, INC.** |
| NSC NEWPORT SPECIALTY CARS INC.,<br><br>　　　　Counterclaimant,<br>v.<br><br>AHMED AL BAKRY<br><br>　　　　Counterdefendant. | |

Defendants AL H. ZADEH and NSC NEWPORT SPECIALTY CARS INC hereby Answer the Complaint of Plaintiff AHMED AL BAKRY as follows:

ANSWER TO COMPLAINT AND COUNTERCLAIMS p. 1

1. Defendants admit all of the allegations in the following paragraphs: 2, 4, 13, 14, 15, 16, 19, 26, 28, 31, 37, 38, 39, 43, 44, 45, 65, and 66.

2. Defendants deny each and every of the allegations of the following paragraphs: 32, 34, 46, 49, 52, 53, 57, 59, 64, 68, 69, 73, 74, 75, 76, 77, 79, 80, 81, 82, 84, 85, 86, 88, 89, 91, 94, 95, 96, 97, 99, 100, 101, 104, 105, 106, 107, 110, 111, 112, 113, 114, .

3. Defendants do not know or have enough information as to whether the allegations of the following paragraphs are true: 1, 9, 10, 11, 12, 17, 18, 20, 21, 22, 23, 24, 25, 27, 29, 30, 36, 50, 51, 54, 56, 58, 62, 63, 64, 70, 71, 78, 83, 87, 90, 93, 98, 108, 109, and 115.

4. Defendants admit only the following parts of the paragraphs listed below, and denies or does not know enough to determine whether the remainder is true:

   33— NSC was hired by Plaintiff Al Bakry to perform the conversion.

   35—Each company is located at the same address.

   40—NSC would act as Al Bakry's agent and would turnover ownership of the vehicle within 24 hours of completion of the dealer transaction.

   41—The pertinent details was a conversion to a two-door car. However, the agreement does not contain a deadline.

   42—The agreement's price for the conversion is $285,000

   47—In or about January 2020, Al Bakry was informed the conversion was completed.

   48—NSC demanded an additional $30,000 from Al Bakry, as the parties previously agreed.

   55—NSC has refused to turn over the vhicle until the agreement's balance is paid and the $30,000 additionally agreed to by Al Bakry.

   67—There was no deadline for the conversion.

   72—The agreement was entered into by NSC.

**AFFIRMATIVE DEFENSES**

5. As a first affirmative defense, Plaintiff has failed to state a claim upon which relief can be granted under California or federal law.

6. As a second affirmative defense, Plaintiff has failed to include one or more necessary parties to this action, and therefore this action is improper and should be dismissed.

7. As a third affirmative defense, Defendants contend the amount truly in dispute by Plaintiff does not exceed $75,000, and this case lacks subject-matter jurisdiction pursuant to 28 U.S.C. §1332.

8. As a fourth affirmative defense, the actions of Defendants which Plaintiff complains are privileged.

9. As a fifth affirmative defense, the consideration promised to Defendants is incomplete or failed.

10. As a sixth affirmative defense, Plaintiff's recovery, if any, must be setoff by the money owed to Defendants.

11. As a seventh affirmative defense, Defendants allege all conduct performed by them was done in good faith.

12. As an eighth affirmative defense, Defendants allege Plaintiff's recovery should be barred based on Plaintiff's unclean hands.

13. As a ninth affirmative defense, Defendants allege Plaintiff's action is not ripe as there is current litigation between Defendants and Al Bakry over the vehicle and Agreement.

14. As a tenth affirmative defense, Defendants allege Plaintiff's claims are barred by the applicable statute of limitations.

15. As a eleventh affirmative defense, Defendants allege Plaintiff's claims do not support any award of attorney fees or costs.

16. As a twelfth affirmative defense, Defendant allege Plaintiff has failed to properly mitigate its claimed damages, and the requested damages must be accordingly reduced.

17. As a thirteenth affirmative defense, Defendants are informed, believe, and alleges there may be additional defenses available, which are now not fully known or of which Defendants are not aware. Defendant reserves the right to raise and assert such additional defenses once they have been ascertained.

## COUNTERCLAIMS OF NSC NEWPORT SPECIALITY CARS INC.

Defendant and Counterclaimant NSC Newport Specialty Cars, Inc. ("NSC") seeks monetary relief for Plaintiff and Counterdefendant Ahmed Al Bakry's breach of contract, fraud, and breach of coveneant of good faith and fair dealing as follows:

### PARTIES

1. Counterclaimant NSC Newport Specialty Cars, Inc. is a corporation registered with, principally located in, and doing business in the County of Orange, State of California.

2. NSC is informed, believes, and alleges thereon Plaintiff/Counterdefendant Al Bakry is not a citizen of the United States, and domiciled in France or the United Arab Emirates.

### FACTS SUPPORTING COUNTERCLAIMS

3. In or about mid-2017, AL BAKRY telephoned Claimant's offices to inquire about a proposed convertible conversion of a 2017 Bentley Mulsanne. Al Bakry represented himself to be the owner of a successful car dealership in Europee and to sell high volumes of custom luxury and high end cars, which a large number of future customers who would purchase Bently Mulsanne convertible conversions.

4. In or around August 2017, NSC and Al Bakry entered into an written Agreement for the Conversion of a Bentley Mulsanne, attached to Al Bakry's complaint as Exhibit A.

5. After a significant delay due to Al Bakry's failure to make the initial payment to NSC, after NSC initiated the conversion of the agreement. In or around March 2019, Al Bakry requested the design be altered to include a hard boot cover, instead of a soft boot cover. NSC's president, Al Zadeh, informed Al Bakry the cost of such a change would cost an additional

$300,000, designing a vehicle prototype would typically be $1,200,000 to $2,000,000, and would take an additional 18 to 24 months to for the project to be completed.

6. Al Bakry represented to NSC that Al Bakry would promote though Al Bakry's large network of clients, at least 10 such conversions of Bentley Mulsannes, and allow Claimant to earn more money than the additional prototype design. Based on Al Bakry's representation, NSC and Al Bakry agreed to include the hard boot cover for only $30,000, in exchange for the promised additional conversions by Al Bakry's customers.

7. In or around January 2020, the time for Al Bakry's final payment of $57,000 under the Conversion Agreement became due and owing to NSC. Furthermore, the additional $30,000 as agreed between NSC and Al Bakry also became due. However, to date, Al Bakry has failed and refused to make such payment to NSC.

8. Moreover, Al Bakry has failed or refused to retrieve the vehicle from NSC or arrange its shipment, which has caused NSC to incurred additional costs and expenses to store the completed vehicle for Al Bakry's benefit. NSC is informed, believes and alleged these consequential damages to be approximately $75 per day, or $2,250 per month, due to Al Bakry's failure to perform under the terms of his agreements with NSC since January 2020.

**First Cause of Action**

**Breach of Contract**

9. NSC and Al Bakry entered into a written agreement for the conversion of Al Bakry's 2017 Bentley Mulsanne. Furthermore, NSC and

10. NSC did all things required of it under the terms of the agreements.

11. Al Bakry breached the written conversion agreement by failing or refusing to pay the final 20% of the price when the conversion was complete in January 2020. Al Bakry breached the terms of his oral agreement with NSC by failing and refusing to pay the $30,000 for the hard boot conversion, as agreed between the parties and when the vehicle was completed by NSC.

12. Al Bakry's conduct was a substantial factor in causing NSC harm.

13. NSC's harm is no less than $170,000

## Second Cause of Action

## Breach of Implied Covenant of Good Faith and Fair Dealing

14. NSC incorporates by reference, as though fully set forth herein, all the preceeding paragraphs of the Counterclaim.

15. NSC and Al Bakry entered into two agreements, each of which contained an implied covenant of good faith and fair dealing.

16. NSC performed all acts required of it under the agreements.

17. Al Bakry breached the implied covenant of good faith and fair dealing by intentionally misrepresenting his intention to promote and market NSC's ability to convert Bently Mulsannes to convertibles in good faith, and by failing to refer any potential customers to NSC.

18. NSC is informed, believes, and alleges it has been harmed by Al Bakry's conduct in an amount no less than 300,000.

## Third Cause of Action

## Fraud

19. Al Bakry made multiple representations to NSC which he knew to be false when he made then, or he intended not to perform when made. These include that Al Bakry would send at least 10 other customers to NSC for Bently Mulsanne convertible conversions, and that Al Bakry would market NSC's conversion to drive additional customers to NSC, and that NSC would make more money on the additional customers referred than the $300,000 cost for the hard boot, and the $1,200,000 to $2,000,000 prototyping costs.

20. Al Bakry knew these representations to be false when he made it, or they were made with a reckless disregard for their truth.

21. NSC reasonably relied on Al Bakry's representations to agree on the scope and cost of the prototype conversion for Al Bakry. If NSC had known the truth, it would have reasonably acted differently and performed less work or charged Al Bakry the true cost for the services.

22. Al Bakry's actions have damaged NSC in an amount no less than $300,000.

23. NSC is entitled to an award of punitive damages pursuant to California law.

**PRAYER**

WHEREFORE, the answering Defendants, and each of them, requests judgment against the Plaintiff as follows:

1. Al Bakry take nothing by his Complaint;
2. NSC be awarded consequential and incidental damages against Al Bakry in an amount no less than $470,000;
3. For punitive damages due to Al Bakry's fraud, in an amount no less than $500,000;
4. For prejudgment interest on the damages at the maximum legal rate;
5. For costs of suit incurred herein;
6. For attorney fees as permitted by statute or contract; and
7. For other such and further relief as the Court may deem just and proper.

Respectfully submitted,                    LAW OFFICE OF DREW PETERSEN, P.C.

Dated: October 17, 2022                    /s/ Gordon Andrew Petersen, II
                                           Gordon Andrew Petersen, II
                                           Attorney for Defendants and Counterclaimant,
                                           Al H. Zadeh, NSC Newport Specialty Cars Inc., and
                                           Mega Engineering Vehicles, Inc.